UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**09 CIV. 9027**

------------------------------------------------X

ERNEST L. ROBINSON, III,

       Plaintiff,

-vs-

**COMPLAINT**

TOWN OF KENT, DARREN CEA,
sued in his individual capacity; and
THOMAS CARROLL, sued in his
individual capacity,

       Defendants.

*JUDGE SEIBEL*

------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Ernest L. Robinson, III, brings this action under the First Amendment to the United States Constitution. On September 13, 2009, plaintiff was handing out political flyers at Town of Kent Community Day at Ryan's Field. Defendant police officers instructed plaintiff to stop distributing the flyers and also told him that Town Law prohibited him from placing them under the windshield wipers of parked cars. In preventing plaintiff from distributing the flyers, they violated the First Amendment. In this action, plaintiff also challenges provisions of the Town of Kent Municipal Code which unduly restrict political leafleting in the Town.

## PARTIES

2. Plaintiff Ernest L. Robinson, III, resides in Stormville, New York, within this judicial district.

3. Defendant Town of Kent is a municipality organized pursuant to the laws of the State of New York. It may sue and be sued.

4.  Defendant Darren Cea is a Town of Kent police officer.  He is a state actor for purposes of this action.

5.  Defendant Thomas Carroll is a Town of Kent police officer.  He is a state actor for purposes of this action.

**JURISDICTION & VENUE**

6.  As plaintiff brings this action under the First Amendment to the United States Constitution, this Honorable Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) & (4) and 42 U.S.C. §§ 1983 and 1988.

7.  As the events giving rise to this action arose in Putnam County, this case is properly venued in Southern District of New York.

**FACTUAL AVERMENTS**

8.  On September 13, 2009, Town of Kent sponsored a Community Day at Ryan's Field, a public park situated in the Town.

9.  Intending to circulate flyers outlining his grievances with Town of Kent Justice Peter Collins and other local officials, plaintiff went to Community Day and  handed out flyers to residents and placed them under the windshield wipers of parked cars.

10. As a public park, Ryan's Field is a public forum under the First Amendment, which prohibits state actors from interfering with plaintiff's speech activity without a compelling governmental interest.

11. Plaintiff's flyer accused Justice Collins of abusing the powers of his office in order to protect Town officials from plaintiff's allegations of municipal corruption. A copy of the flyer, entitled "The Real Judge Collins," is annexed as Exhibit 1.

2

12. At no point during Community Day did plaintiff disrupt the event or cause any public disturbance in distributing his flyers.

13. After circulating flyers at Community Day for approximately two hours, defendant police officers approached plaintiff to advise that he was not permitted to distribute flyers at this event and that Town Law prohibited him from placing flyers under the windshield wipers of parked cars.

14. When defendants Cea and Carroll approached plaintiff in connection with his leafleting, they seized approximately one dozen of his flyers and told him that he would be subject to arrest if he continued to circulate them in the park that day.

15. After they interfered with his leafleting, defendants Cea and Carroll detained plaintiff at the park for approximately 30 minutes as they contemplated whether to place him under arrest.

16. As a result of defendants' interference with his leafleting, in order to avoid any further complications with the police including the possibility of arrest, plaintiff left the park and continued leafleting to persons as they left the event.

17. As plaintiff was not permitted to leaflet within the park, he was substantially restricted in disseminating his political message.

18. Although Robinson resides in Stormville, a hamlet of the Town of East Fishkill, he desires to continue circulating his flyers throughout Town of Kent to further publicize his grievance with Town officials.

19. Defendants' interference with plaintiff's leafleting on September 13, 2009 has chilled his advocacy and dissuaded him from leafleting at Town-sponsored events in

the future and placing flyers under the windshields of parked vehicles in the municipality.

20. As a result of plaintiff's expulsion from Ryan's Field on September 13, 2009 and defendants' order that he comply with Town law prohibiting the placement of leaflets under the windshield wipers of parked cars, plaintiff endured pain and suffering and humiliation.

21. The Town Code contains provisions which unconstitutionally restrict freedom of speech in that they (1) prohibit leafleting on parked vehicles; (2) prohibit the placement of flyers on certain private premises and (3) prohibit leafleters from placing flyers on public places within the Town.

22. Town Code § 41-11 reads: "No person shall throw or deposit any commercial or noncommercial handbill in or upon any sidewalk, street or other public place within the Town; nor shall any person hand out or distribute or sell any commercial handbill in any public place; provided, however, that it shall not be unlawful on any sidewalk, street or other public place within the Town for any person to hand out or distribute, without charge to the receiver thereof, any noncommercial handbill to any person willing to accept it."

23. Town Code § 45-12 reads: "No person shall throw or deposit any commercial or noncommercial handbill in or upon any vehicle; provided, however, that it shall not be unlawful in any public place for a person to hand out or distribute without charge to the receiver thereof a noncommercial handbill to any occupant of a vehicle who is willing to accept it."

4

24. Town Code § 45-13 reads: "No person shall throw or deposit any commercial or noncommercial handbill in or upon any private premises which are temporarily or continuously uninhabited or vacant."

25. These provisions unduly burden the free exchange of political and social ideas in that plaintiff and other similarly-situated leafleters do not have ample alternative methods to communicate their message with Town residents.

26. Prohibiting leafleters from placing flyers on parked cars infringes upon the right of anonymous speech and requires them to undertake more time-consuming methods to communicate with residents, *i.e.*, they must distribute flyers by hand to passersby or to people who are sitting in their parked automobiles.  The option of mailing out flyers to residents also represents an insufficient alternative as this method is far more costly and unwieldy then leafleting on parked cars.

27. Prohibiting leafleters from placing literature on "private premises which are temporarily or continuously uninhabited or vacant" unduly infringes upon the right of anonymous speech and requires leafleters to guess whether a given residence is occupied or not.  As the ordinance is not limited to the knowing placement of flyers on unoccupied residences, it necessarily requires that plaintiff and similarly-situated leafleters either (1) refrain from placing flyers and other literature on certain properties for fear of violating the ordinance or (2) engage in guesswork in determining whether the property is occupied and risk sanction under the ordinance.

28. Section 45-13 is unconstitutionally vague in that reasonable leafleters may interpret "temporarily ... vacant" to include residences in which the occupants are on vacation

5

or otherwise out of town for a brief period of time.

29. Any governmental interest in restricting visual clutter or litter on "private premises which are temporarily ... uninhabited or vacant" is outweighed by the right of leafleters to efficiently place literature on properties and to do so anonymously and without fear of any sanction.

30. Prohibiting leafleters from "deposit[ing] any ... noncommercial handbill in or upon any sidewalk, street or other public place" deprives plaintiff and other similarly-situated persons the opportunity to distribute written materials in a public forum. This provision further deprives plaintiff of the opportunity to post flyers on private property in public places, defined under the ordinance to include "[a]ny and all streets, sidewalks, boulevards, alleys or other public ways and any and all public parks, squares, spaces, grounds, buildings and parking lots."

31. As the Town has other means to prevent litter, harassment and trespass, the above prohibitions against leafleting in the Town are not narrowly tailored to serve any substantial Town interest.

32. As a result of the Town Code's prohibition against the placement of leaflets on certain private premises and public places within the Town, plaintiff has refrained from aggressively promoting his political disagreements and grievances against municipal officials for fear of violating the ordinance.

**CAUSES OF ACTION**

33. Plaintiff incorporates the allegations in ¶¶ 1-32 as if fully re-stated herein.

34. In seizing plaintiff's flyers and prohibiting him from leafleting in Ryan's Field on

6

Community Day, defendant officers violated the First Amendment to the United States Constitution, as made actionable through 42 U.S.C. § 1983.

35. In applying § 45-12 against plaintiff when he placed flyers on vehicles parked in and about Ryan's Field on Community Day, defendant officers violated the First Amendment to the United States Constitution, as made actionable through 42 U.S.C. § 1983.

36. As §§ 45-11 through 45-13 are not narrowly tailored to satisfy legitimate governmental interests and do not leave political leafleters with ample means to communicate their views and grievances, these provisions violate the First Amendment to the United States Constitution, as made actionable through 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Honorable Court:

a.  accept jurisdiction over this action;

b.  award to plaintiff damages for pain and suffering and humiliation;

c.  award to plaintiff punitive damages for the unconstitutional restriction on his protected speech activity;

d.  award to plaintiff nominal damages in light of the unconstitutional restriction on his protected speech activity;

e.  declare that §§ 45-11 through 45-13 of the Town Code are unconstitutional and enjoin the Town from enforcing these provisions;

f.  award to plaintiff reasonable attorneys' fees and costs expended in litigating this

action; and

g.  enter any other relief deemed just and proper.

Dated:     October 29, 2009

Respectfully submitted,

STEPHEN BERGSTEIN

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiff

8

# EXHIBIT 1

# THE REAL JUDGE COLLINS

My name is Ernest Robinson. I had the misfortune of being accused of a violation I did not commit and had the further misfortune to have my case before Judge Peter Collins. I reported my brother, a town highway employee, for misusing town time and equipment, and stealing town property and instead of the town investigating and firing him. I was accused of harassing him and was falsely prosecuted. I believe this was to cover up massive stealing at the highway and central garage by town employees with personal relationships with the town board and supervisor. These persons are all political allies and supporters of Judge Collins. During the course of my case with Judge Collins:

1. Dismissed my case when my brother failed to appear at trial and then reinstated it without explanation and violating my double jeopardy protection.
2. Threatened me several times with incarceration when I would not accept a plea deal.
3. Allowed witness tampering of my subpoenaed witnesses by the town attorney Tim Curtiss and town supervisor Kathy Doherty.
4. Refused to sign So Ordered subpoenas in a timely manner and instead stamped the subpoenas with a rubber stamp (which contrary to statutory law) and rendering them invalid and only making said subpoenas available less than 48 hours before my trial even though he had such subpoenas for more than two weeks before my scheduled trial date.
5. Held improper ex parte communications with the town prosecutor, excluding my lawyer, before the trial.
6. Held a lengthy meeting with town supervisor Kathy Doherty, my subpoenaed witness, in his office, before my trial where I was to call her as a witness.
7. Refused to provide me with a copy of my court file until he was forced to do so after his office was visited by the New York State Grievance Committee for the Ninth Judicial District, whose investigator personally appeared at the Court to also request a copy of my file.
8. Refused to recuse himself from my case at my request because of his political relationship with my subpoenaed witnesses until he was *forced* to do so by the Administrative Judge for the Ninth Judicial District, Judge Charles Apotheker. Even then, Judge Collins used a sham excuse that he was aware of the *entire* time my case was before him.
9. Stopped my trial two times so he could have a photo opportunity with visiting school children, using my trial for his own political advantage.
10. After recusing himself, Judge Collins attempted to control which court my case would be transferred too although he did not have the legal authority to do so and in fact violated the rules of conduct by attempting to continue his control over my case following his *forced* recusal.

**Judge Collins is currently under investigation by the Committee on Judicial Conduct on at least two separate complaints alleging serious misconduct on his part that may result in his removal from the bench. Additional complaints are being made against him for other acts of serious misconduct.**

845 - 742 - 0468