UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ERNEST L. ROBINSON, III,

                              Plaintiff,

               - against -                            **OPINION AND ORDER**

TOWN OF KENT, DARREN CEA, sued in his            No. 09-CV-9027 (CS)
individual capacity, and THOMAS CARROLL,
sued in his individual capacity,

                             Defendants.
------------------------------------------------------------------------x

Appearances:

Stephen Bergstein
Bergstein & Ullrich, LLP
Chester, New York
*Counsel for Plaintiff*

Steven C. Stern
Adam I. Kleinberg
Leo Dorfman
Sokoloff Stern LLP
Westbury, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court are the Motion for Summary Judgment of Defendants Town of Kent ("the Town") and Police Officers Darren Cea and Thomas Carroll (collectively "Defendants"), (Doc. 24), and the Cross-Motion for Partial Summary Judgment of Plaintiff Ernest L. Robinson, III, (Doc. 25). For the following reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART, and Plaintiff's Cross-Motion is GRANTED.

**I.      Background**

The following facts are undisputed, except where noted.  In 1973, the Town passed a comprehensive anti-littering ordinance, which is codified in Chapter 45 of the Town's Code. (Ds' 56.1 ¶ 6.)[1]  Section 12 of Chapter 45 states

> [n]o person shall throw or deposit any commercial or non-commercial handbill in or upon any vehicle, provided, however, that it shall not be unlawful in any public place for a person to hand out or distribute without charge to the receiver thereof, a non-commercial handbill to any occupant of a vehicle who is willing to accept it.

(Kleinberg Decl. Ex. C, at 4.)[2]  In September 2010, the Town amended Section 45-12 by modifying the first clause of the provision to state that "[n]o person shall throw or deposit any commercial or non-commercial handbill in or upon any vehicle, *such as to cause damage to said vehicle* . . . ."  (Kleinberg Decl. Ex. F, at 2) (emphasis added).

In August 2009, Plaintiff drafted a flyer to distribute to Town residents entitled "The Real Judge Collins," (Bergstein Aff. Ex. 1),[3] which aired Plaintiff's grievances concerning what he believed to be an abuse of governmental authority by Town Justice Peter Collins in an unrelated case brought against Plaintiff, (Ds' 56.1 ¶¶ 22–25, 29; P's Reply 56.1 ¶ 29[4]).  Plaintiff made approximately 2,000 copies of the flyer, most of which he distributed through the mail to registered Town voters, by hand at the local Shop Rite supermarket, and on the Town Hall bulletin board.  (*See* Ds' 56.1 ¶¶ 34, 36, 39, 41–42, 45–51.)

---

[1] "Ds' 56.1" refers to Defendants' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1.  (Doc. 31.)
[2] "Kleinberg Decl." refers to the Declaration of Adam I. Kleinberg in Support of Defendants' Motion for Summary Judgment.  (Doc. 37.)
[3] "Bergstein Aff." refers to the Affirmation of Stephen Bergstein in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment.  (Doc. 27.)
[4] "P's Reply 56.1" refers to Plaintiff's Reply to Defendants' Rule 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment.  (Doc. 32.)

On September 13, 2009, the Town held its annual Community Day at Ryan's Field, (*id.* ¶¶ 58–61), and Plaintiff brought a one-inch thick stack of his flyers to distribute there, (*id.* ¶ 62; P's 56.1 ¶¶ 1–2[5]).  In addition to distributing the flyers by hand directly to people, Plaintiff, who was not aware of Section 45-12, also spent approximately two hours placing the flyers on windshields of cars in the parking lot of Ryan's Field.  (*See* Ds' 56.1 ¶¶ 63–66, 94–95; P's 56.1 ¶ 4.)  Officer Carroll attended Community Day to perform a police canine demonstration, but was alerted to Plaintiff's flyer and a concern over whether Plaintiff had broken a windshield wiper while leafleting the cars.  (Ds' 56.1 ¶¶ 71–72.)  Flyers drafted by at least one other person—Philip Marin, who was running for election to the Town Justice position—were found on windshields of some of the same cars in the parking lot of Ryan's Field, so it was unclear who, if anyone depositing the flyers, was responsible for the damage.  (*Id.* ¶¶ 67, 76; P's Reply 56.1 ¶ 76.)  Officer Carroll called into the Town police station to report the situation, and Officer Cea was dispatched to assist him.  (Ds' 56.1 ¶¶ 73–74; P's 56.1 ¶ 6.)

Officer Cea arrived at Ryan's Field and, after speaking with Officer Carroll, approached Plaintiff about the flyers.  (Ds' 56.1 ¶¶ 75–81; P's 56.1 ¶¶ 7–8.)  Plaintiff admitted to having placed flyers on car windshields that day, and Officer Cea instructed Plaintiff that such distribution was prohibited by the Town's Code.  (Ds' 56.1 ¶¶ 82–84; P's 56.1 ¶ 9.)  Officers Cea and Carroll also advised Marin of the Code's prohibition against leafleting on car windshields.  (Ds' 56.1 ¶ 120.)  Officer Cea told Plaintiff that Plaintiff had to remove the flyers that he had placed on the cars, but that Officer Cea would help him collect them.  (*Id.* ¶¶ 92–95; P's 56.1 ¶¶ 10, 13.)  Officer Cea gave the flyers he had collected back to Plaintiff, and asked Plaintiff whether he had broken the windshield wiper, to which Plaintiff responded that he had

---

[5] "P's 56.1" refers to Plaintiff's Rule 56.1 Statement in Support of his Cross-Motion for Summary Judgment.  (Doc. 26.)

3

not.  (*See* Ds' 56.1 ¶¶ 106, 114–16.)  Officer Carroll called his supervisor regarding the situation, and the supervisor instructed the officers to let Plaintiff go without issuing a citation.  (*See id.* ¶¶ 124–25; P's 56.1 ¶ 15.)  Plaintiff waited between 25 and 30 minutes while Officer Carroll spoke with his supervisor before he was free to leave the parking lot.  (*See* Ds' 56.1 ¶ 131; P's 56.1 ¶¶ 15–16; Ds' Reply 56.1 ¶¶ 15–16.[6])  Officers Cea and Carroll complied with their supervisor's instructions and let Plaintiff leave after issuing a warning.  (Ds' 56.1 ¶¶ 128, 132; P's 56.1 ¶ 17.)  Plaintiff states that before the officers let him leave, they told him that he could not distribute his flyers at Ryan's Field at all, (P's Reply 56.1 ¶ 99), but the officers claim that they told Plaintiff only that he could not leaflet on car windshields, (Ds' 56.1 ¶ 129).

Plaintiff filed his Complaint in this action on October 27, 2009, (Doc. 1), alleging that various sections of the Town's Code violated his First Amendment rights.  In their instant Motions, Plaintiff and Defendants have represented to the Court that Plaintiff has abandoned his claims regarding Sections 45-11 and 45-13 of the Code, (*see* P's Mem. 1;[7] Ds' Mem. 3;[8] Ds' Reply Mem. 1[9]), for declaratory and injunctive relief based on Section 45-12, (*see* Ds' Mem. 3), and against Officers Cea and Carroll for enforcing Section 45-12, (*see* P's Mem. 9 n.3; Ds' Reply Mem. 1).  Accordingly, Plaintiff's remaining claims are that (1) Section 45-12, as applied to him on September 13, 2009, was unconstitutional; (2) Officers Cea and Carroll violated the First Amendment by allegedly telling Plaintiff that he could not distribute leaflets at all on

---

[6] "Ds' Reply 56.1" refers to Defendants' Response to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1.  (Doc. 35.)
[7] "P's Mem." refers to Plaintiff's Memorandum of Law in Support of His Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment.  (Doc. 29.)
[8] "Ds' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment.  (Doc. 33.)
[9] "Ds' Reply Mem." refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment and in Further Support of Defendants' Motion for Summary Judgment.  (Doc. 34.)

Community Day; and (3) the Town may be liable if Officers Cea and Carroll did in fact restrict Plaintiff from leafleting altogether on Community Day.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

### III. Constitutionality of Section 45-12 of the Town's Code

The Supreme Court has held that, even in a public forum, "the government may impose reasonable restrictions on the time, place, or manner of . . . speech" that is protected under the First Amendment, as long as the restrictions "are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted). With respect to the governmental interest, "the government has the burden of showing that there is evidence supporting its proffered justification for its speech restriction when asserting that the restriction survives the time, place, and manner analysis." *Horina v. City of Granite City, Ill.*, 538 F.3d 624, 633 (7th Cir. 2008) (internal quotation marks omitted). Although the government need not produce a wide array of evidence, it must "proffer *something* showing that the restriction actually serves a governmental interest." *Id.* at 633–34 (emphasis in original). Courts have struck down time, place, and manner restrictions where the government failed to set forth "objective evidence" demonstrating that the restrictions served the interests asserted. *Id.* at 634; *see also id.* at 633–35 (City provided no evidence that ordinance against handbilling was necessary to combat litter, intrusion, trespass, or harassment in City); *Klein v. City of San Clemente*, 584 F.3d 1196, 1201–04 (9th Cir. 2009) (City failed to provide any evidence that placing leaflets on cars resulted in litter, much less more-than-minimal amount of litter); *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1221–22 (8th Cir. 1999) (no factual basis existed for concluding cause-and-effect relationship between placement of leaflets on parked cars and litter that impacted health, safety, or aesthetic well-being of City).

Although preventing litter and ensuring driver safety have been found to be significant government interests, *see, e.g.*, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."); *Jobe v. City of Catlettsburg*, 409 F.3d 261, 268 (6th Cir. 2005) (prohibiting litter and visual blight is a significant government interest), the Town has failed to set forth sufficient documentary or testimonial evidence to show that its interest in reducing litter, enhancing town aesthetics, and protecting driver safety justifies the restrictions in Section 45-12. Rather, Defendants have proffered only surmise. They have provided generalizations about the Town's littering problem, (*see* Kleinberg Decl. Ex. E, at 33–36);[10] pointed to meeting minutes from a public hearing held by the Town that shed no light on the reasons or need for Section 45-12, (*see* Kleinberg Decl. Ex. D); provided a copy of the original law showing that Section 45-12 was part of an anti-littering law, (*see* Kleinberg Decl. Ex. C); and argued that New York State and at least 38 other cities have passed similar laws, (*see* Ds' Mem. 7–8), its citizens should be able to decide whether their private property may be used as a container for a public advertisement, (*see id.* 7), and there is a "very real danger posed to both residents and their property when motorists begin to drive their cars before noticing the flyers and having a chance to remove them," (Ds' Reply Mem. 10). These conclusory statements, however, do not constitute objective evidence that leafleting on cars has in fact led to litter in the Town,[11] that Town citizens have objected to their

---

[10] The only leaflet-related testimony was that certain businesses leafleted cars in a shopping center. (Kleinberg Decl. Ex. E, at 33–35.) The Town Supervisor testified only that "we don't like when people are touching people's cars," (*id.* 35), not that that leafleting had caused litter, (*see id.* 33–36). No evidence of citizen complaints regarding their cars being touched has been provided.

[11] Indeed, leafleting a car is no more littering than placing a leaflet in a mailbox; the leaflet becomes litter only if it flies loose or is tossed on the ground by the recipient. *See Vincenty v. Bloomberg*, 476 F.3d 74, 85 (2d Cir. 2007) ("[A] city has a legitimate aesthetic interest in forbidding the littering of its public areas with paper; but that could not justify a prohibition against the public distribution of handbills, even though the recipients might well toss them

cars being used as vessels for political leafleting,[12] or that leaflets left on windshields have obscured drivers' vision.[13] In sum, the Town has not carried its burden. It has not shown either the reasons for the law's passage in 1973 or established a factual basis for concluding that leafleting on vehicles causes the problems that the Town asserts.[14] Although this Court can imagine an ordinance like Section 45-12 being justifiable, the Defendants in this case have not shown that the justifications apply here. Accordingly, in the absence of genuine disputes of material fact regarding the constitutionality of Section 45-12 as applied to Plaintiff, Plaintiff's Cross-Motion on his as-applied claim regarding Section 45-12 is granted, and Defendants' Motion is denied.

## IV.   Conduct of Officers Cea and Carroll on Community Day

### A.   Qualified Immunity for Officers Cea and Carroll

Government officials exercising discretionary functions are entitled to qualified immunity shielding them from damages in a Section 1983 suit "insofar as their conduct does not

---

on the street.") (citations omitted). Other subsections of Chapter 45 of the Town's Code prohibit littering in general. (*See* Kleinberg Decl. Ex. C).

[12] While there is no evidence that the Town's citizens object to the leafleting of their cars, I agree with the Sixth Circuit that it would be no answer to require drivers to affix signs on the dashboards of their cars asserting their desire not to have leaflets left on their windshields. *See Jobe*, 409 F.3d at 272. That would be an "unorthodox burden," *id.*, but in the absence of any evidence that people have complained about leaflets left on their windshields or were leafleted so much that it was a burden, it is easy enough for drivers to simply throw out the occasional handbill left on their cars.

[13] It strikes the Court as unlikely in the extreme that a flyer could be so obtrusive as to obstruct a driver's vision and yet so unobtrusive as not to be noticed on the car windshield before the driver drove off.

[14] This case is distinguishable from *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984), where the Supreme Court upheld an ordinance that prevented people from posting signs on public property because the signs created a "visual assault on the citizens of Los Angeles" and "visual blight" that had an "adverse impact on the appearance of the landscape." *Id.* at 807, 810. Whereas leaflets are left on the windshield of a car for a matter of minutes or hours, the signs on City utility poles in *Vincent* were permanent fixtures until they were removed by City workers. *See id.* at 793; *see also* Klein, 584 F.3d at 1202 n.4 (finding rationale of *Vincent* inapplicable as applied to an ordinance similar to Section 45-12 because City only argued that leaflets constituted blight when strewn on ground, not when leaflets were attached to cars). Moreover, unlike here, in *Vincent* "the substantive evil—visual blight—[wa]s not merely a possible by-product of the activity, but [wa]s created by the medium of expression itself." *Vincent*, 466 U.S. at 810. To whatever extent leaflets on car windshields constitute blight, this Court finds that it is much less than the signs at issue in *Vincent* and, in any event, only a by-product of the activity.

violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), or insofar as it was objectively reasonable for them to believe that their conduct did not violate such rights, *see Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987).  A government official sued in his individual capacity is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable . . . in light of the legal rules that were clearly established at the time it was taken.

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (alteration in original) (citations and internal quotation marks omitted); *see Creighton,* 483 U.S. at 639 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken.") (citations and internal quotation marks omitted).  Thus, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

Defendants acknowledge that material facts exist as to whether Officers Cea and Carroll prevented Plaintiff from handing out flyers at Ryan's Field or in the surrounding area after they stopped him from leafleting on car windshields in the Ryan's Field parking lot.  (*See* Ds' Reply Mem. at 2, 13.)  If Officers Cea and Carroll did in fact tell Plaintiff that he could not hand out his flyer directly to people, this would have been in violation of clearly established law—namely, the First Amendment,[15] *see McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346–47 (1995)

---

[15] Section 45-11 of the Town's Code also acknowledges the constitutional right to handbill.  (*See* Kleinberg Decl. Ex. C, at 4.)  It states, in relevant part, "that it shall not be unlawful on any sidewalk, street or other public place

9

("handing out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression")—and the officers would not be entitled to qualified immunity. Likewise, material facts exist regarding whether the Officers Cea and Carroll actually restrained Plaintiff from leaving the parking lot in a manner "'so intrusive as to be tantamount to an arrest.'"  (P's Mem. 23 (quoting *Giles v. Repicky*, 511 F.3d 239, 245 (2d Cir. 2007)).  Because the parties dispute material facts concerning what was said and done in the parking lot during Community Day, Defendants' Motion regarding whether Officers Cea and Carroll are entitled to qualified immunity is denied.

### B. Town of Kent Liability

Municipalities may be sued directly for constitutional violations pursuant to 42 U.S.C. § 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but they cannot be held liable for acts of their employees "by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *accord Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997) (municipality may not be found liable simply because one of its employees committed a tort).  Rather, a plaintiff must show that a violation of his or her constitutional rights resulted from a municipal policy or custom.  *Monell*, 436 U.S. at 690–91.  The existence of such a policy or custom may be pleaded in one of four ways:  a plaintiff may allege

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority . . . ; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

---

within the town for any person to hand out or distribute, without charge to the receiver thereof, a non-commercial handbill to any person willing to accept it."  (*Id.*)

*Bonds v. Suffolk Cnty. Sheriff's Dep't*, No. 05-CV-3109, 2006 WL 3681206, at \*2 (E.D.N.Y. Dec. 5, 2006). Thus, to sustain a claim against the Town, Plaintiff must "allege the existence of an affirmative municipal policy" by making "factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009).

While there is no dispute that the prohibition on windshield leafleting was a municipal policy, the same cannot be said for the allegation that the individual Defendants told Plaintiff that he was not permitted to distribute flyers at Community Day and that he would be subject to arrest if he continued to circulate them there. (*See* Complaint ¶¶ 13–15, 17.) But Plaintiff does not allege in his Complaint or motion papers that the officers' conduct was the result of a municipal policy or that it was at the behest of an individual who possessed policymaking authority. The only allegation Plaintiff makes is that the officers enforced a "heckler's veto"—specifically, that Katherine Doherty, the Town Supervisor, was "visibly angry" and "made it clear that she wanted the officers to do something about plaintiff's offensive flyers"—when they allegedly ordered Plaintiff to stop leafleting at Ryan's Field on Community Day. (P's Mem. 24.)

Even if true, Plaintiff makes no argument that it was a municipal policy to enforce heckler's vetoes, and thus fails to provide even bare, conclusory, or boilerplate allegations (which in any event would be insufficient) in support of his claim against the Town. *See Dwares v. City of N.Y.*, 985 F.2d 94, 100–01 (2d Cir. 1993) (dismissing municipal liability claim because plaintiff did not allege any facts to suggest existence of custom or policy other than the one instance complained of, and "mere assertion . . . that a municipality has such a custom or policy

is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). If what Plaintiff intends to assert is that Doherty as Town Supervisor was a final policymaker for the Town, there is no indication that she had final law enforcement decision-making authority, and Plaintiff does not allege as much.[16] *See Jeffes v. Barnes*, 208 F.3d 49, 56–58 (2d Cir. 2000) (plaintiff bears burden to show that actions complained of "were taken or caused by an official whose actions represent official policy, [and] the court must determine whether [under state law] that official had final policymaking authority *in the particular area involved*") (emphasis added); N.Y. Town Law § 29 (McKinney 2006) (providing powers and duties of Town Supervisor, but making no mention of police responsibilities or powers). At most, Plaintiff's allegation reflects a single, isolated incident of allegedly improper conduct of the individual Defendants. Because a "municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees," *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992), Defendants' Motion for Summary Judgment is granted as to the Town's liability for the conduct of Officers Cea and Carroll on Community Day.

---

[16] Indeed, it seems clear that Officers Cea and Carroll were not taking orders from Doherty, as by Plaintiff's account Doherty spoke angrily to the officers before they first spoke to Plaintiff in the parking lot, and yet they neither arrested nor even ticketed Plaintiff for his violation of Section 45-12. (*See* P's Mem. 2–3, 5, 24.)

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff's Cross-Motion is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending motions, (Docs. 24, 25), and the parties are directed to appear before this Court for a pre-trial conference on **January 12, 2012 at 9:45 a.m.**

**SO ORDERED.**

Dated: December 29, 2011
       White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

13